J-S48030-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ORACIO SANCHEZ | |
| Appellant | No. 1576 MDA 2016 |

Appeal from the PCRA Order Entered August 31, 2016
In the Court of Common Pleas of York County
Criminal Division at No: CP-67-CR-0006000-2011

BEFORE: OTT, J., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY STABILE, J.:          **FILED NOVEMBER 09, 2017**

Appellant, Oracio Sanchez, appeals *pro se* from the August 31, 2016 order dismissing his petition pursuant to the Post Conviction Relief Act ("PCRA") 42 Pa.C.S.A. §§ 9541-46. We affirm.

This Court summarized the facts on direct appeal:

> On June 26, 2011, Javier Alvarado had a birthday party at his house. Guest began arriving at the party around 7 p.m. Around 8 p.m., a man named Poncho arrived and got into an argument with Oracio Sanchez Sr., Appellant's father. At that time, Oracio Sanchez Sr. called Appellant and asked him to bring guns to the party. Appellant arrived at the party with a shotgun, remained there until Poncho left, and then departed. Shortly thereafter, Appellant returned again with two friends. Appellant and his friends placed the guns they brought under a nearby car, and then joined the party.

---

[*] Retired Senior Judge assigned to the Superior Court.

A short while later, the victim, Alejandro Castro, observed Appellant's friend, "Creeper," urinating in front of some female guests. The victim asked Creeper to stop this behavior. At that time, Appellant approached the victim and hit him. Appellant and Creeper continued to hit the victim. In an effort to get away, the victim hit Appellant in the face with two glass bottles. Appellant fell to the ground and the victim ran away towards the house. Appellant then ran to the car, grabbed a gun from underneath, and ran back towards the victim. Oracio Sanchez Sr. attempted to stop Appellant, but Appellant pushed him out of the way. Appellant ran towards the victim and shot him in the back as he tried to enter the house. The victim died instantly.

After fleeing the scene, Appellant went to the hospital for his head injury. At the hospital, Appellant told detectives he was attacked by a group of black males while out for a walk. Blood tests revealed that Appellant's blood alcohol content (BAC) was .151. The detective that questioned Appellant stated that he was lucid enough to understand and answer all questions.

*Commonwealth v. Sanchez*, 2186 MDA 2012 (Pa. Super. July 18, 2013), unpublished memorandum at 1-3 (record citations omitted).

A jury found Appellant guilty of first-degree murder. On July 2, 2012, the trial court sentenced him to life in prison without parole. This Court affirmed the judgment of sentence on July 18, 2013, and our Supreme Court denied allowance of appeal on January 15, 2014. Appellant filed this timely first PCRA petition on July 23, 2014. Appointed counsel filed an amended petition on September 8, 2014. Dissatisfied with the counseled petition, Appellant petitioned the PCRA court for a change of appointed counsel. The PCRA court granted Appellant's request, and his second appointed counsel filed an amended petition on April 2, 2015. Once again dissatisfied with the counseled petition, Appellant asked the PCRA court to appoint different

- 2 -

counsel. On December 24, 2015, the PCRA court appointed Appellant's third counsel. On April 19, 2016, third appointed counsel filed a no merit letter and petition to withdraw pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). On August 10, 2016, the PCRA court filed its Pa.R.Crim.P. Rule 907 notice of intent to dismiss the petition without a hearing and granted counsel's petition to withdraw. The trial court dismissed Appellant's petition on August 31, 2016 and this timely appeal followed.

Appellant presents seven questions for our review. Appellant's Brief at 4. His first and third questions address alleged prosecutorial misconduct, and trial counsel's ineffectiveness for failing to raise this issue at trial. We must determine whether the record supports the PCRA court's findings of fact, and whether its ruling was free of legal error. **Commonwealth v. Washington**, 927 A.2d 586, 593 (Pa. 2007). In order to succeed on a claim of ineffective assistance of counsel, a petitioner must establish that the underlying issue is of arguable merit, that counsel had no reasonable strategic basis for his act or omission, and that counsel's error prejudiced the petitioner such that the outcome of the proceeding would have been different absent the error. **Commonwealth v. Koehler**, 36 A.2d 121, 132 (Pa. 2012).

Appellant claims the prosecutor committed misconduct by presenting the trial testimony of Azalea Bernal. According to Appellant, Bernal said in a police statement that she did not see the shooting. At trial, she testified that

- 3 -

she saw Appellant shoot the victim. Appellant claims counsel was ineffective for failing to object to the prosecution's presentation of false testimony.

Pennsylvania Courts recognize "the general proposition that a conviction cannot be based upon false evidence[.]" *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1138 n.28 (Pa. 2012) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). "[T]his Court has held that a 'conviction obtained by the **knowing** use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment.'" *Commonwealth v. Lambert*, 765 A.2d 306, 325 (Pa. Super. Ct. 2000) (quoting *Commonwealth v. Romansky*, 702 A.2d 1064, 1067 (Pa. Super. 1997)) (emphasis in original). This principle holds whether the prosecution solicits the false evidence or allows unsolicited false evidence to go uncorrected. *Napue*, 360 U.S. at 269.

Appellant offers no evidence that Bernal's change in testimony was the result of prosecutorial misconduct. There is no evidence that Bernal was under any suspicion, or that she had any incentive to testify favorably to the Commonwealth. Furthermore, Bernal's trial testimony, even if she falsified it at trial, could not have contributed to the verdict. Three other eyewitnesses testified that Appellant shot the victim. N.T. Trial, 5/14-16/12, at 90, 137, 147, 156, 166. As set forth above, the shooting occurred at a party where many witnesses were present. At trial and on direct appeal, Appellant presented evidence and arguments for voluntary intoxication and provocation.

He did not seriously contest the overwhelming evidence implicating him as the shooter. In summary, Appellant has failed to present any evidence of prosecutorial misconduct, and the allegedly falsified testimony did not prejudice Appellant. This argument fails.

Appellant's second argument is that his sentence of life imprisonment without parole is illegal because he committed noncapital first-degree murder. Appellant is mistaken about the law governing first-degree murder. Pursuant to 18 Pa.C.S.A. § 1102 and 42 Pa.C.S.A. § 9711, a defendant convicted of first-degree murder receives a sentence of death or life imprisonment, depending upon the applicability of factors specified in § 9711. Appellant's life sentence is legal. Appellant's argument fails.

Appellant's fourth argument (we considered the third together with the first) is that trial counsel was ineffective for failing to cross-examine various witnesses about prior inconsistent statements. Appellant notes that one eyewitness to the shooting, Javier Alvarado, told police that it was Appellant, not Appellant's friend "Creeper," who was urinating in front of some women prior to the altercation. At trial, Alvarado testified that Creeper, not Appellant, did the public urinating. Likewise, eyewitness Denora Vargas told police that Appellant, the victim, and others were in a brawl before Appellant shot the victim. At trial, she offered more detail, stating that the problem began with Creeper's public urination.

The PCRA court noted that Alvarado and Vargas never wavered in their testimony that they saw Appellant shoot the victim, and they were not the only eyewitnesses to the shooting. We observe that Vargas' trial testimony was more detained than, but not necessarily inconsistent with, her statement to police. The PCRA court found no prejudice to Appellant, and we agree. Despite slightly inconsistent accounts of the beginning of the altercation, eyewitnesses were unanimous that Appellant was the shooter, and that he shot the victim in the back as the victim was leaving the scene of the altercation. Cross-examination on minor inconsistencies would not have created a basis upon which the jury could have found that someone other than Appellant was the shooter. Furthermore, Appellant does not explain how the omitted cross-examination could have advanced his voluntary intoxication or provocation theories. We agree with the PCRA court that this issue lacks merit.

Appellant's fifth argument is that trial counsel was ineffective for failing to object to the trial court's jury instructions on murder. Appellant claims "counsel should have objected to the charge of first-degree murder, because this charge did not pertain to Appellant since his case was non-capital." Appellant's Brief at 18. As we explained above, this is simply incorrect.

Appellant also claims the trial court charged the jury on common law murder, rather than one of the statutory homicide offenses, because the trial court used the word "malice." Appellant's Brief at 19. Appellant is incorrect.

As noted above, Appellant offered a voluntary intoxication defense at trial. If successful, Appellant would have been convicted of third-degree murder rather than first-degree murder. 18 Pa.C.S.A. § 308; **Commonwealth v. Fletcher**, 861 A.2d 898, 907-08 (Pa. 2004), **cert. denied**, 547 U.S. 1041 (2006). That is, a successful voluntary intoxication defense can negate the specific intent to kill necessary for a first-degree murder conviction. **Id.** Voluntary intoxication, however, does not negate a finding of malice necessary to commit third degree murder. **Commonwealth v. Ruff**, 405 A.2d 929, 929 (Pa. Super. 1979).

Appellant also argues that the trial court improperly instructed the jury that it could infer specific intent to kill if they found that Appellant used a deadly weapon on a vital part of the victim's body. Appellant's Brief at 20. Appellant's argument directly contradicts governing law. **Commonwealth v. Ragan**, 743 A.2d 390, 400 (Pa. 1999) ("It is well settled law in Pennsylvania that the Commonwealth may prove specific intent to kill by circumstantial evidence, and, therefore, a jury may infer the requisite malice to establish first-degree murder from the defendant's use of a deadly weapon upon a vital part of the victim's body.").

Appellant's sixth argument is that counsel was ineffective for failing to move to suppress Appellant's statement to police. The record reveals that Appellant sustained a blow to the head with a beer bottle during the altercation that preceded the shooting. Appellant voluntarily checked himself into a

hospital to receive treatment for his injuries. He claims police subjected him to a custodial interrogation during his hospital stay and failed to inform him of his ***Miranda***[1] rights.

> The standard for determining whether an encounter with the police is deemed "custodial" or police have initiated a custodial interrogation is an objective one based on a totality of the circumstances, with due consideration given to the reasonable impression conveyed to the person interrogated. Custodial interrogation has been defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way. Interrogation is police conduct calculated to, expected to, or likely to evoke admission. When a person's inculpatory statement is not made in response to custodial interrogation, the statement is classified as gratuitous, and is not subject to suppression for lack of warnings. *Id*.

***Commonwealth v. Mannion***, 725 A.2d 196, 200 (Pa. Super. 1999).

Detective Jeffrey Spence testified that the investigating officers received word that a Mexican male checked into a local emergency room with head injuries, and he decided to interview the injured party. N.T. Trial, 5/14-16/12, at 237-38. Unsure if Appellant's injuries were related to the brawl and subsequent homicide under investigation, Spence asked Appellant how we was injured. ***Id.*** at 238. Appellant claimed he had been jumped by a group of black males. ***Id.*** at 239. Appellant was wearing a neck brace and claimed he had been drinking, but he was lucid and able to understand and respond to questions. ***Id.*** at 239-40. Spence did not read Appellant his ***Miranda***

---

[1] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

rights, because Spence viewed Appellant as a possible victim rather than a suspect at the time. *Id.* at 246. Spence was at the hospital for twenty to thirty minutes, and did not engage in a long conversation with Appellant. *Id.* at 242-43. Spence spoke to Appellant's cousin while waiting for hospital staff to bring Appellant to his assigned room. *Id.*

Thus, the record reflects a short conversation between Appellant and Detective Spence in a hospital room, during which time Detective Spence viewed Appellant as a potential victim. Appellant claims Detective Spence was lying, and that witnesses at the scene already identified him as the shooter. In any event, the PCRA court concluded that Appellant was not subjected to a custodial interrogation, and we agree. A question of how Appellant was injured did not invite or require an admission from Appellant that he shot the victim. Furthermore, Appellant voluntarily checked himself into a hospital and was not in police custody. Detective Spence left Appellant's hospital room after a short conversation. Appellant's argument fails.

In his final argument, Appellant asserts that trial counsel's bad advice led Appellant to reject a favorable plea agreement. The PCRA court found this issue waived because Appellant failed to include it in his PCRA petition. Our review of the record confirms the PCRA court's finding. Appellant did not include this issue in his original *pro se* petition or either of his amended, counseled petitions. He cannot raise it for the first time on appeal. Pa.R.A.P. 302(a).

In summary, we have concluded that six of Appellant's arguments lack merit and the seventh is waived.[2]  We therefore affirm the order dismissing his petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/9/2017

---

[2]  Appellant also has filed a supplemental brief in which he claims, among other things, that he is innocent of first-degree murder, that counsel was ineffective for failing to conduct sufficient investigations of the witnesses to testify at trial, and that the PCRA court erred in permitting his third appointed counsel to withdraw.  Appellant failed to raise these issues prior to this appeal. They are unreviewable under Pa.R.A.P. 302(a).